IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LILLIAN HURTADO, Individually,
HELEN LAURA LOPEZ, as Personal Representative
of the Wrongful Death Estate of VICTORIA VAUGHT, Deceased,
DANIEL VAUGHT, Individually,
TODD LOPEZ, as Personal Representative
of the Wrongful Death Estate of MARIAH HURTADO,
KRISTINA MARTINEZ as Personal Representative
of the Wrongful Death Estate of TINA HURTADO,
JASON HURTADO, Individually and as Next Friend of
E.H. and K.L., minors, and SHIVAUN CARTER, Individually,

       Plaintiffs,

vs.                                       Civ. No. 22-cv-0599 KG/JFR

                                       Removed from the District
                                       Court of Santa Fe County,
                                       State of New Mexico, D-101-
                                       CV-2022-01147

AM TRANSPORT SERVICES, INC., LARIE APARICIO,
AMT LEASING, INC., MAURICIO MARQUEZ,
LANGE LOGISTICS, INC.,
TOM LANGE COMPANY INTERNATIONAL, INC. d/b/a SEVEN SEAS,
TOM LANGE COMPANY, INC.,
FNF CONSTRUCTION INC.,
LISA VEGA; and JAN NICLAS,

       Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before this Court on Motions to Dismiss (Doc. 35-37) filed by

Lange Logistics, Inc. ("Lange Logistics"); Tom Lang Company, Inc. ("Tom Lang"); and Tom

Lang Company International, Inc. d/b/a SEVEN SEAS, (collectively "Lange defendants"). The

Motions are fully and timely briefed. *See* (Docs. 35-37, 43-45, 48, 50, 52).

In this case, the Court is presented with a tragic traffic accident resulting in multiple injuries and deaths. All the injuries and deaths resulting from the traffic accident are extremely unfortunate. This Court concludes, however, that Lange defendants do not have sufficient contacts to allow this Court to have jurisdiction over any of them. Hence, all three Motions to Dismiss by Lange defendants (Docs. 35-37) are granted.

I.     *Background*

   A.  *Factual Background*

This Court will assume all allegations in the amended complaint are true for purposes of this Motion, unless stated otherwise. On June 25, 2021, an unfortunate traffic accident resulted in multiple injuries and deaths in New Mexico on Interstate 40. (Doc. 28, First Amended Complaint ("FAC")) at ¶ 1. One of the defendants was driving a truck owned by another defendant when he attempted to change lanes and crashed into a vehicle. *Id.* at ¶¶ 31-33.

   B.  *Procedural History*

Plaintiffs filed a complaint in the District Court of Santa Fe County on June 29, 2022, that was removed based on diversity jurisdiction and fraudulent joinder to this Court on August 12, 2022. (Doc. 1). On August 12, 2022, Lange defendants filed the Notice of Removal. *Id.* On August 17, 2022, plaintiffs filed another complaint in the District Court of Santa Fe County against a defendant state engineer in this case and an additional NMDOT employee, which they amended two days later to include "all of the remaining defendants who were named in this case and who are currently before this Court." (Doc. 22) at 5, ¶ 3 (citing (Doc. 16-1)).

On August 19, 2022, Lange defendants each filed motions to dismiss for lack of jurisdiction and failure to state a claim. (Docs. 6-8). On August 23, 2022, plaintiffs filed an opposed motion to dismiss without prejudice under Rule 41(a)(2), (Doc. 16), which this Court

has denied in a separate order.  On September 9, 2022, plaintiffs filed an amended complaint.[1]

(Doc. 28, ("FAC")).  On September 12, 2022, plaintiffs filed a motion for remand, (Doc. 29),

which this Court has denied in a separate order.

On September 23, 2022, Lange defendants each again filed motions to dismiss for lack of

jurisdiction and failure to state a claim.  (Docs. 35-37).  These motions at bar are fully briefed

and shall be addressed herein.

II.     *Standards of Law*

A.  *Motion to Dismiss under Rule 12(b)(2):  Personal Jurisdiction*

Plaintiffs bear the burden of establishing personal jurisdiction over a defendant.  *OMI

Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (citing *Rambi

v. American Southern Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988)).  When a district court

rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without

holding an evidentiary hearing, as in this case, the plaintiff need only make a *prima facie*

showing of personal jurisdiction to defeat the motion.  *Id.* (citing *Kuenzle v. HTM Sport–Und

Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996)).  Plaintiffs "may make this *prima facie*

showing by demonstrating, via affidavit or other written materials, facts that—if true—would

support jurisdiction over the defendant." *Id.*  When a court does not have personal jurisdiction

over defendants, it must dismiss the claims against those defendants without prejudice.  *Albert v.

Smith's Food & Drug Centers, Inc.*, 356 F.3d 1242, 1249 (10th Cir. 2004) (citations and footnote

omitted).

---

[1] Although Lange Defendants contend that plaintiffs' amendment is improper, the Court has held "where there are multiple defendants, and this twenty-one-day period has expired as to some defendants but not others, the plaintiff may amend the complaint as a matter of course as to those defendants for whom the twenty-one day period has not yet expired." *Culver v. Lithium Motors, Inc.*, No. 15-669-MCA/SCY, 2016 U.S. Dist. LEXIS 186781, at *21, 2016 WL 7426587, at *7, (D.N.M. May 12, 2016) (unpublished) (quoting *Hylton v. Any Time Towing*, No. 11-1039, 2012 U.S. Dist. LEXIS 41010, 2012 WL 1019829 (SD. Cal. March 26, 2012) (unpublished) (citing *Jackson v. WCM Mortgage Corp.*, 2013 U.S. Dist. LEXIS 106972, 2013 WL 3967110, *4 (W.D. Tenn. July 31, 2013) (unpublished)).

The due process analysis depends in part on whether the jurisdiction alleged is "general" or "specific."  Under general jurisdiction, a court may exercise personal jurisdiction over a defendant even where the action is unrelated to the defendant's contacts with the forum state. *See, e.g.*, *OMI Holdings, Inc.*, 149 F.3d at 1091 (quoting *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 557 (2d Cir. 1996) (other citation omitted)). The Supreme Court has said that a court may properly assert "general jurisdiction" where the defendant's contacts with the state are so "'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operators, S.A, v. Brown*, 564 U.S. 915, 919 (2011)) (other citations and footnote omitted)); *see also Trujillo v. Williams*, 465 F.3d 1210, 1218 n. 7 (10th Cir. 2006) (citing *Helicopteros Nacionales v. Hall*, 466 U.S. 408, 415 (1984)).  Regarding a corporation, its state of incorporation and principal place of business are the paradigmatic bases for general jurisdiction. *Daimler*, 571 U.S. at 137 (citations omitted).

Because New Mexico's long-arm statute extends the jurisdictional reach of New Mexico courts "as far as constitutionally permissible," *United Nuclear Corp. v. General Atomic Co.*, 1977-NMSC-079, ¶ 2, the Court need only analyze whether due process permits personal jurisdiction, *see e.g.*, *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011) (quoting *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.,* 618 F.3d 1153, 1159 (10th Cir. 2010)). Due process requires proving two elements.  First, that the defendant has sufficient "minimum contacts" with the forum state such that the defendant "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citation omitted); *Tercero v. Roman Catholic Diocese of Norwich, Connecticut*, 2002-NMSC-018, ¶ 7.  And second, that asserting jurisdiction would not offend traditional notions of fair play and substantial

4

justice. *Tercero*, 2002-NMSC-018, ¶ 7 (quoting *International Shoe Co. v. State of Washington*,

326 U.S. 310, 320 (1945)); *see also Sproul v Rob & Charlies, Inc.*, 2013-NMCA-072, ¶ 9.

B.   *Motion to Dismiss under Rule 12(b)(6):  Failure to State a Claim*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Emps.' Ret. Sys. of R.I. v.*

*Williams Cos., Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (quoting *Ashcroft v. Iqbal,* 556 U.S.

662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).  In making this plausibility assessment, courts

"accept as true 'all well-pleaded factual allegations in a complaint and view these allegations in

the light most favorable to the plaintiff.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir.

2013) (quoting *Kerber v. Qwest Grp. Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011)).

III.   *Motion to Dismiss under Rule 12(b)(2):  Personal Jurisdiction*

Defendant Tom Lange contends that "there is no personal jurisdiction over Tom Lange in

this case because the constitutional standards for general and specific personal jurisdiction are

not satisfied; nor are the requirements of the New Mexico long arm statute, NMSA 1978, Section

38-1-16." (Doc. 36) at 2.  Defendant Tom Lange contends that plaintiffs cannot "establish

specific jurisdiction in New Mexico as Tom Lange had no relation to any vehicle involved, was

not engaged in any business, and did not engage in any tortious conduct or other involvement

relating to New Mexico and the accident." *Id.*  Defendant Tom Lange also contends that

plaintiffs have not established the "constitutionally necessary element of minimum contacts

necessary," or established that jurisdiction in this matter would not violate fair play and

substantial justice.  *Id.* at 2-3, 9-10.  Other Lange defendants have similar arguments, which will be discussed in turn.

Plaintiffs contend that they properly have alleged that defendants are joined in a joint venture.  If this Court "decides to take up defendants' motions to dismiss for lack of personal jurisdiction and failure to state a claim," plaintiffs request this Court grant leave "to conduct discovery to include written and oral depositions of Tom Lange Company, the other Lange companies, and other parties or nonparties."  *See, e.g.,* (Doc. 21) at 12; (Doc. 20) 11-12.   For the reasons discussed herein and because plaintiffs offered no allegations or evidence to demonstrate this would be fruitful, plaintiffs' request to conduct discovery to include written and oral depositions of Tom Lange Company and the other Lange companies is denied.

 *A.  Tom Lange*

  *1.  Allegations*

Plaintiffs allege that Aparicio was the driver of the semi-tractor owned by AM Transport that caused the five-car pile-up resulting in injuries and deaths.  (Doc. 28) at ¶ 32.  Plaintiffs further allege that defendant Marquez is the owner of AM Transport and AMT Leasing.  *Id.* at ¶ 51.  Plaintiffs allege that defendant Aparicio was the employee of AM Transport, AMT Leasing and Marquez; that Aparicio was negligent; and that AM Transport, AMT Leasing and Marquez are legally liable for Aparicio's negligence.  *Id.* at ¶¶ 64-66.  Plaintiffs also allege that AM Transport, AMT Leasing, and Marquez were negligent in hiring, selecting, training, supervising, and retaining Aparicio.  *Id.* at Counts II-V.

In their amended complaint, plaintiffs also allege that defendant Lange Logistics, Inc. ("Lange Logistics") is an interstate broker and that it brokered a load being hauled by AM Transport driver, defendant Aparicio.  *Id.* at ¶¶ 61-62.  As noted by defendant Tom Lange, the

"only specific allegations about Tom Lange are that it is (1) organized under the laws of Missouri, (2) that its principal office is in St. Louis, Missouri, (3) that it can be served through The Corporation Company in Clayton, Missouri, and (4) that it is the parent company of Lange Logistics and Tom Lange Co. Int'l, Inc. d.b.a. Seven Seas ("Seven Seas Fruit"). (Doc. 36) at 4 (citing Doc. 28) (other citations omitted). In response, plaintiffs attach images purportedly from a website of Tom Lange defendants indicating that these entities are a "family of companies," which "complete the entire production, distribution and logistics 'Circle' when it comes to produce." *See, e.g.,* (Doc. 44) at 7-8. Plaintiffs rely in part on these images for their contention that defendants were engaged in a joint venture. *See id.; see also, e.g.,* (Doc. 21) at 5-6.

   *2. Analysis*

   Defendant Tom Lange argues that it "is not subject to general personal jurisdiction in this case because it is not 'at home' in New Mexico by virtue of its single 'place of incorporation' or 'principal place of business.'" (Doc. 36) at 5 (citing *Daimler AG*, 571 U.S. at 137-39 (other citations omitted)). According to the affidavit by Tom Lange's CEO attached to the original motion to dismiss, defendant Tom Lange is organized (incorporated) under the laws of Missouri and has its principal office in St. Louis, Missouri. (Doc. 8-1) at ¶¶ 2-3. In its reply, Tom Lange argues that plaintiffs "totally fail to address Tom Lange's original motion or this conditional motion as to general personal jurisdiction and, as such, have waived the issue." (Doc. 52) at 7 (citations omitted). This Court agrees that this issue is waived, but also finds no basis for general personal jurisdiction.

   Defendant Tom Lange also argues that it is not subject to specific personal jurisdiction. (Doc. 36) at 6 (quoting *Sanchez v. Church of Scientology of Orange Co.*, 1993-NMSC-034, ¶ 8, 115 N. M. 660, 663, 857 P. 2d 771, 774). Defendant Tom Lange argues that it had no relation to

the motor carrier or even the load and did not have anything to do with the vehicle entering New

Mexico, or traveling to or through New Mexico, or the accident that occurred in New Mexico.

(Doc. 36) at 8-9 (citations omitted).  Defendant Tom Lange also argues that "there is no

allegation, and certainly no evidence of, any agreement between Tom Lange and the motor

carrier AM Transport or defendants AMT Leasing, Inc., Marquez, or Aparicio of any kind, but

more particularly, no agreement to combine money, property, or time and thus, it could not have

been in any sort of joint venture relating to this decedent." *Id*.  Tom Lange further argues that it

was not "involved in owning, producing or shipping the load… thus Tom Lange had 'no

substantial relation' or 'minimum contacts' with New Mexico related to the lawsuit." *Id*. at 9.

For specific personal jurisdiction, due process requires proving both that defendant has

sufficient "minimum contacts" with the forum state and that asserting jurisdiction will not offend

traditional notions of fair play and substantial justice.  *See, e.g.*, *International Shoe Co. v. State

of Washington*, 326 U.S. 310, 316 (1945); *see also Sproul v. Rob & Charlies, Inc.*, 2013-NMCA-

072, ¶ 9.  Neither of these conditions is met here.

As alleged by plaintiffs, defendant Aparicio was the driver of the semi-tractor owned by

AM Transport that caused the accident and defendant Marquez is the owner of AM Transport.

(Doc. 28) at ¶¶ 32, 51.  Plaintiffs allege that Aparicio was the employee of AM Transport, AMT

Leasing and Marquez.  *Id*. at ¶¶ 64-66.  Plaintiffs allege Lange Logistics brokered the load (from

Georgia to Texas), and Tom Lange is not alleged to have any specific direct involvement with

directing the route, other than general conclusory allegations of control ascribed to multiple

defendants.  *Id*. at ¶¶ 61-62.  Furthermore, although the shipment was travelling through New

Mexico it was not specifically directed at New Mexico or based on a contractual obligation to

any of New Mexico's citizens by any of the Lange defendants.  In fact, the load brokered by

Lange Logistics was to be taken from Georgia only as far as Amarillo, Texas.  (Doc. 8-2) at ¶¶ 5-11.

Other than conclusory allegations of control, whether Tom Lange had any control over the route of the cargo only is in dispute because plaintiffs allege the presence of a joint venture. Plaintiffs offer no affidavits, written materials, or any evidence in support of their allegations regarding the presence of a joint venture.  Instead, they contend the circumstances themselves demonstrate the existence of a joint venture, and further supply images from the Lange defendants' website about the family of Lange Companies working together.  (Doc. 21) at 6 (quoting *Archuleta v. Thi of New Mexico, LLC*, No. 31,950, 2014 WL 890613, at*13 (N.M. Ct. App. January 9, 2014) ("a joint venture may be inferred from conduct when 'the parties agree to combine their money, property, or time for conducting a particular business venture and agree to share jointly in profits and losses'")); (Doc. 44) at 7-9.  Plaintiffs offer no affidavits, written materials, or any evidence that any Lange defendant with any other defendant agreed "to share jointly in profits and losses," and hence, no evidence of a joint venture. *See Archuleta*, 2014 WL 890613, at*13.  Without such joint venture, no claims can be maintained against any Lange defendant, as demonstrated by specific affidavits, as discussed further herein, below, *see infra*.

 This Court, based on plaintiff's allegations and arguments, as well as the defendants' affidavits, finds that defendant Tom Lange was not involved with the truck, the load, or its placement in New Mexico.  The only connection appears to be that Tom Lange is the parent company of Lange Logistics, which brokered the load.  Furthermore, Lange Logistics merely contracted for cargo delivery from Georgia to Texas, it did not purposefully direct any activities towards New Mexico.  Even Lange Logistics lacks the sufficient minimum contacts necessary reasonably to anticipate being hailed into this Court, as discussed further below, *see infra,*

Section III.C.  To conclude otherwise would require this Court to hold that any upstream entity

in the transportation and logistics chain is subject to personal jurisdiction in any state through

which a load happens to pass, even though the upstream entity did not contract for or dictate the

route taken.

The Court concludes that specific jurisdiction fails because the crash did not arise out of

business activities specifically directed at New Mexico by defendant Tom Lange.  In addition,

though it need not do so, this Court concludes it would violate fair play and substantial justice to

assert personal jurisdiction over defendant Tom Lange.  The Tenth Circuit considers the

following five factors in deciding whether the exercise of jurisdiction would be fair:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the
> dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4)
> the interstate judicial system's interest in obtaining the most efficient resolution of
> controversies, and (5) the shared interest of the several states or foreign nations in
> furthering fundamental social policies.

*Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1167 (10th Cir. 2011) (*quoting Dudnikov v.*

*Chalk & Vermilion Fine Arts.*, 514 F.3d 1063, 1080 (10th Cir. 2008)) (other citation omitted).

That defendant Tom Lange lack sufficient minimum contacts is an important consideration.  The

"reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the

plaintiff's showing on minimum contacts, the less a defendant need show in terms of

unreasonableness to defeat jurisdiction." *TH Agric. & Nutrition, LLC v. Ace European Group.*

*L.L.C.*, 488 F.3d 1282, 1292 (10th Cir. 2007) (*quoting OMI Holdings, Inc.*, 149 F.3d at 1092)

(internal quotations and alterations omitted).  Considering these factors in light of the

circumstances herein, this Court concludes that the exercise of jurisdiction by this Court over

Tom Lange would not be fair.  Tom Lange's motion to dismiss must be granted.

10

B.  *Lang Company International, Inc. d/b/a SEVEN SEAS ("Seven Seas Fruit")*

The arguments provided by Seven Seas Fruit in their motion to dismiss are nearly

identical to those presented by Tom Lange, as are plaintiffs' responses.  For example, Seven Seas

Fruit notes that the "only specific allegations about Seven Seas Fruit are that it is (1) organized

under the laws of Illinois, (2) that its principal office is in St. Louis, Missouri, (3) that it can be

served through CT Corporation System in Chicago, Illinois, (4) that it is affiliated with Tom

Lange and Lange Logistics and that Seven Seas Fruit is organized to grow, pack and ship

produce around the globe.  (Doc. 37) at 4-5 (citing Doc. 28) (other citations omitted).  In

response, plaintiffs attach images purportedly from a website of Lange defendants indicating that

these entities are a "family of companies," which "complete the entire production, distribution

and logistics 'Circle' when it comes to produce."  *See, e.g.,* (Doc. 45) at 7-8.  Plaintiffs rely on

these images in part for their contention that defendants were engaged in a joint venture.  *See id.*

Defendant Seven Seas Fruit argues that it "is not subject to general personal jurisdiction

in this case because it is not 'at home' in New Mexico by virtue of its 'place of incorporation' or

'principal place of business.'"  (Doc. 37) at 6 (citations omitted).  According to the affidavit by

Tom Lange's CEO attached to the original motion to dismiss, defendant Seven Seas Fruit is

organized (incorporated) under the laws of Illinois and has its principal place of in Missouri.

(Doc. 8-1) at ¶ 6.  In its reply, defendant Seven Seas Fruit argues that plaintiffs "apparently

concede that the Court has no general jurisdiction over Seven Seas Fruit because it is not 'at

home' in New Mexico." (Doc. 50) at 7 (citations omitted). This Court agrees that this issue is

waived, but also finds no basis for general personal jurisdiction.

Defendant Seven Seas Fruit also argues that it is not subject to specific personal

jurisdiction. (Doc. 37) at 6 (quoting *Sanchez,* 1993-NMSC-034, ¶ 8, 115 N.M. at 663, 857 P. 2d

at 774).  Defendant Seven Seas Fruit argues that it had no relation to the motor carrier or even

the load and did not have anything to do with the vehicle entering New Mexico, or traveling to or

through New Mexico, or the accident that occurred in New Mexico.  (Doc. 37) at 9 (citations

omitted).  Defendant Seven Seas Fruit also argues that "there is no allegation, and certainly no

evidence of, any agreement between Seven Seas Fruit and the motor carrier AM Transport or

defendants AMT Leasing, Inc., Marquez, or Aparicio of any kind, but more particularly, no

agreement to combine money, property, or time and thus, could not have been in any sort of joint

venture relating to this decedent."  *Id.*  Seven Seas Fruit further argues that it was not "involved

in owning, producing or shipping the load… thus Seven Seas Fruit had 'no substantial relation'

or 'minimum contacts' with New Mexico related to the lawsuit."  *Id.*

As already noted, for specific personal jurisdiction, due process requires proving both

that defendant has sufficient "minimum contacts" with the forum state and that asserting

jurisdiction will not offend traditional notions of fair play and substantial justice. *See, e.g.*,

*International Shoe Co.*, 326 U.S. at 316; *see also Sproul*, 2013-NMCA-072, ¶ 9.  Again,

regarding Seven Seas Fruit, neither of these conditions is met.

As alleged by plaintiffs, defendant Aparicio was the driver of the semi-tractor owned by

AM Transport that caused the accident and defendant Marquez is the owner of AM Transport.

(Doc. 28) at ¶¶ 32, 51.  Plaintiffs allege that Aparicio was the employee of AM Transport, AMT

Leasing and Marquez. *Id.* at ¶¶ 64-66.  Plaintiffs allege Lange Logistics brokered the load, and

Seven Seas Fruit is not alleged to have any specific direct involvement with directing the route,

other than general conclusory allegations of control. *Id.* at ¶¶ 61-62.  Furthermore, although the

shipment was travelling through New Mexico it was not specifically directed at New Mexico or

based on a contractual obligation to any of New Mexico's citizens by any of the Lange

defendants.  In fact, the load brokered by Lange Logistics was to be taken from Georgia only as far as Amarillo, Texas.  (Doc. 8-2) at ¶¶ 5-11.  It was not even Seven Seas Fruit's produce that was transported to Texas.  *Id.*

Other than conclusory allegations of control, whether Seven Seas Fruit had any control over the route of the cargo only is in dispute because plaintiffs allege the presence of a joint venture.  *See TH Agric. & Nutrition, LLC.*, 488 F.3d at 1291.  Plaintiffs offer no affidavits, written materials, or any evidence in support of their allegations regarding the presence of a joint venture.  Instead, they contend the circumstances themselves demonstrate the existence of a joint venture, and further supply images from Lange defendants' website about the family of Lange Companies working together.  (Doc. 20) at 5-6 (quoting *Archuleta*, 2014 WL 890613, at*13 ("a joint venture may be inferred from conduct when 'the parties agree to combine their money, property, or time for conducting a particular business venture and agree to share jointly in profits and losses'")); (Doc. 45) at 7-9.

This Court, based on plaintiff's allegations and arguments, as well as Lange defendants' affidavits, finds that defendant Seven Seas Fruit was not involved with the truck, the load, or its placement in New Mexico.  The only connection appears to be that Tom Lange is the parent company of Lange Logistics, which brokered the load, and is the parent of Seven Seas Fruit.  Furthermore, Lange Logistics merely contracted for cargo delivery from Georgia to Texas, it did not purposefully direct any activities towards New Mexico.

The Court concludes that specific jurisdiction fails because the crash did not arise out of business activities specifically directed at New Mexico by defendant Seven Seas Fruit.  In addition, though it need not do so, this Court concludes it would violate fair play and substantial justice to assert personal jurisdiction over defendant Seven Seas Fruit.  The Tenth Circuit

considers the following five factors in deciding whether the exercise of jurisdiction would be

fair:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the
> dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4)
> the interstate judicial system's interest in obtaining the most efficient resolution of
> controversies, and (5) the shared interest of the several states or foreign nations in
> furthering fundamental social policies.

*Marcus Food Co.*, 671 F.3d at 1167 (*quoting Dudnikov*, 514 F.3d at 1080) (other citation

omitted).  That defendant Seven Seas Fruit lack sufficient minimum contacts is an important

consideration.  The "reasonableness prong of the due process inquiry evokes a sliding scale: the

weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of

unreasonableness to defeat jurisdiction." *TH Agric. & Nutrition,* 488 F.3d at 1292 (*quoting OMI*

*Holdings, Inc*., 149 F.3d at 1092) (internal quotations and alterations omitted).  Considering

these factors in light of the circumstances herein, this Court concludes that the exercise of

jurisdiction by this Court over Seven Seas Fruit would not be fair.  Seven Seas Fruit's motion to

dismiss must be granted.

### C.  *Lange Logistics*

The arguments provided by Lange Logistics in their motion to dismiss are nearly

identical to those presented by the other Lange defendants, as are plaintiffs' responses.  For

example, Lange Logistics notes that the only "specific allegations as to Lange Logistics ... are

that it is 1) organized (incorporated) under the laws of Missouri [actually, Illinois], and its

principal office is in Missouri, 2) that Tom Lange is Lange Logistics' parent company 3) that

Lange Logistics is organized to provide transportation solutions for temperature-controlled

perishable products, 4) that Lange Logistics is a broker of interstate motor carriers subject to

Federal Motor Carrier Safety Act ("FMCSA") regulations, and 5) that Lange Logistics acted as a

broker of the load hauled by a tractor-trailer being driven by defendant Aparicio and owned by

AM Transport Services, Inc.  (Doc. 35) at 3 (citing (Doc. 28)) (other citations omitted).

In response, plaintiffs attach images purportedly from a website of Lange defendants

indicating that these entities are a "family of companies," which "complete the entire production,

distribution and logistics 'Circle' when it comes to produce." *See, e.g.,* (Doc. 43) at 7-10.

Plaintiffs rely on these images in part for their contention that defendants were engaged in a joint

venture. *See id.*

The main difference regarding claims against Lange Logistics is the allegation that Lange

Logistics acted as a broker of the relevant load hauled by defendant Aparicio. *See* (Doc. 28) at ¶

62.  However, Lange Logistics notes that plaintiffs failed to allege where the brokered load was

being transported from and to.  (Doc. 35) at 3.  According to the affidavit of the account manager

for Lange Logistics, the load defendant Lange Logistics brokered was to be picked up at two

points in Georgia and delivered to three destinations in Texas and hence would not be traveling

into or through New Mexico. *Id.* (citing (Doc. 8-2) at ¶¶ 3, 5.  Lange Logistics argues that as the

brokered load ended in Amarillo, Texas, it has no connection at all with the load traveling into

New Mexico. *Id.*

 Lange Logistics also argues that plaintiffs failed to allege what the relationship between

Lange Logistics /AM Transport was or any facts from which the type of relationship could be

established." *Id.*  According to the affidavit of the account manager for Lange Logistics, the

Broker-Carrier Agreement entered into between Lange Logistics and AM Transport specifically

indicates the relationship is as an independent contractor is not a joint venture relationship. *Id.* at

3-4 (citing (Doc. 8-2) at ¶ 4).  Lange Logistics contends that it "had nothing to do with the

tractor-trailer and driver entering into New Mexico, traveling through New Mexico, or being

involved in the alleged accident on June 25, 2021." *Id.* at 4 (citing (Doc. 8-2) at ¶¶ 5-12).

Defendant Lange Logistics argues that it "is not subject to general personal jurisdiction in

this case because it is not 'at home' in New Mexico by virtue of its single 'place of

incorporation' or 'principal place of business.'" (Doc. 35) at 5 (citations omitted). According to

the affidavit by Tom Lange's CEO attached to the original motion to dismiss, defendant Lange

Logistics is organized (incorporated) under the laws of Illinois and has its principal place of in

Missouri. (Doc. 8-1) at ¶ 8. In its reply, defendant Lange Logistics argues that plaintiffs "totally

fail to address Lange Logistics' motion as to general personal jurisdiction." (Doc. 52) at 7

(citations omitted). This Court finds no basis for general personal jurisdiction.

Defendant Lange Logistics also argues that it is not subject to specific personal

jurisdiction. (Doc. 35) at 6-7 (quoting *Sanchez*, 1993-NMSC-034, ¶ 8, 115 N.M. at 663, 857 P.

2d at 774). Defendant Lange Logistics argues that it did not have anything to do with the vehicle

entering New Mexico, or traveling to or through New Mexico, or the accident that occurred in

New Mexico. (Doc. 35) at 9 (citations omitted). Lange Logistics also argues that the "cargo was

never supposed to go anywhere near New Mexico." *Id.* (citing (Doc. 8-2) at ¶¶ 5-12). Although

plaintiffs contend that Lange Logistics "arranged the load, brokered the load, and controlled at

the transportation of the load," such allegations are directly contradicted by the affidavit and

plaintiffs offer no evidence, only conclusory allegations, in response. (Doc. 19) at 12.

Defendant Lange Logistics contends that "the Broker-Carrier Agreement makes AM

Transport (the motor carrier) responsible for "any and all management, governing, discipline,

direction and control of its employees, owner/operators and equipment.'" (Doc. 35) at 9-10

(citing (Doc. 8-1) at ¶ 12). Lange Logistics also argues that "the Broker-Carrier Agreement

shows that the relationship between a broker and carrier is one of an independent contractor and that there was no joint venture." *Id.* at 10 (citing (Doc. 8-1) at ¶ 11).  In fact, according to the affidavit by Tom Lange's CEO attached to the original motion to dismiss, the Broker-Carrier Agreement specifically indicates that "none of the terms were to be construed for any purpose to express or imply a joint venture." *Id.* (citing (Doc. 8-1) at ¶ 11).  This Court concludes that plaintiffs' conclusory allegations cannot trump an affidavit.  Plaintiffs offer no evidence.

As already noted, for specific personal jurisdiction, due process requires proving both that defendant has sufficient "minimum contacts" with the forum state and that asserting jurisdiction will not offend traditional notions of fair play and substantial justice. *See, e.g.*, *International Shoe Co.*, 326 U.S. at 316; *see also Sproul*, 2013-NMCA-072, ¶ 9.  Again, regarding Lange Logistics, neither of these conditions is met.

As alleged by plaintiffs, defendant Aparicio was the driver of the semi-tractor owned by AM Transport that caused the accident and defendant Marquez is the owner of AM Transport. (Doc. 28) at ¶¶ 32, 51.  Plaintiffs allege that Aparicio was the employee of AM Transport, AMT Leasing and Marquez. *Id.* at ¶¶ 64-66.  Plaintiffs allege Lange Logistics brokered the load (from Georgia to Texas). *Id.* at ¶¶ 61-62.  Furthermore, although the shipment was travelling through New Mexico it was not specifically directed at New Mexico or based on a contractual obligation to any of New Mexico's citizens by any of the Lange defendants.  In fact, the load brokered by Lange Logistics was to be taken from Georgia only as far as Amarillo, Texas.  (Doc. 8-2) at ¶¶ 5-11.

Plaintiffs offer no affidavits, written materials, or any evidence in support of their allegations regarding the presence of a joint venture.  Instead, they contend the circumstances themselves demonstrate the existence of a joint venture, and further supply images from the

Lange defendants' website about the family of Lange Companies working together.  (Doc. 19) at

6 (quoting *Archuleta*, 2014 WL 890613, at *13 ("a joint venture may be inferred from conduct

when 'the parties agree to combine their money, property, or time for conducting a particular

business venture and agree to share jointly in profits and losses'")); (Doc. 43) at 7-10.

      This Court, based on plaintiff's allegations and arguments, as well as Lange defendants'

affidavits, finds that defendant Lange Logistics was not involved with the truck or the driver

after they completed the brokered load transportation to Texas, and Lange Logistics was not

involved with the truck entering New Mexico.  Furthermore, Lange Logistics merely contracted

for cargo delivery from Georgia to Texas, it did not purposefully direct any activities towards

New Mexico.

      The Court concludes that specific jurisdiction fails because the crash did not arise out of

business activities specifically directed at New Mexico by defendant Lange Logistics.  In

addition, though it need not do so, this Court concludes it would violate fair play and substantial

justice to assert personal jurisdiction over defendant Lange Logistics.  The Tenth Circuit

considers the following five factors in deciding whether the exercise of jurisdiction would be

fair:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the
> dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4)
> the interstate judicial system's interest in obtaining the most efficient resolution of
> controversies, and (5) the shared interest of the several states or foreign nations in
> furthering fundamental social policies.

*Marcus Food Co.*, 671 F.3d at 1167 (*quoting Dudnikov*, 514 F.3d at 1080) (other citation

omitted).  That defendant Lange Logistics lack sufficient minimum contacts is an important

consideration.  The "reasonableness prong of the due process inquiry evokes a sliding scale: the

weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of

unreasonableness to defeat jurisdiction." *TH Agric. & Nutrition, LLC*, 488 F.3d at 1292

(*quoting OMI Holdings, Inc*., 149 F.3d at 1092) (internal quotations and alterations omitted).

Considering these factors in light of the circumstances herein, this Court concludes that the

exercise of jurisdiction by this Court over Lange Logistics would not be fair.  Lange Logistics'

motion to dismiss must be granted.

IV.     *Motion to Dismiss under Rule 12(b)(6):  Failure to State a Claim*

A.  *Tom Lange*

Defendant Tom Lange contends that plaintiffs' complaint contains "no allegation of any

conduct by Tom Lange at all in this case… when the conclusory allegations, lumping several

defendants together, are excised because they are not specific to Tom Lange." (Doc. 36) at 10

(citing (Doc. 28) at ¶¶ 56-60 and new Count VIII).  Defendant Tom Lange contends that

plaintiffs "admit that AM Transport was an independent contractor and thus, not a joint venture."

(Doc. 36) at 11 (citing (Doc. 28) Count VIII title).  Indeed, the title for this count is "Negligence,

Negligent Selection, Negligent Hiring of an Independent Contractor."  (Doc. 28) at Count VIII

title.

Plaintiffs respond to this argument by referring to the allegations that defendant Tom

Lange is the parent company of Lange Logistics and Seven Seas Fruit and that many defendants

were engaged in a joint venture with an equal right to control the venture and that Lange

defendants, by means of this joint venture, directed, controlled, managed, and supervised the

transportation of the load.  (Doc. 21) at 9-12.  Plaintiffs also point to their allegations that the

Lange defendants acted negligently by hiring an unfit and unsafe motor carrier.  (Doc. 44) at 5-7.

Plaintiffs admit that other than the promotional information on the Lange defendants' website

describing them as a family of companies operating full circle service, plaintiffs "have no

documents showing the relationship between the Lange defendants besides the self-serving affidavits." *Id.* at 9. Plaintiffs contends that the "manner in which the three companies [the Lange defendants] are presented on their shared website suggests that they are collaborative in the matter of a joint venture." *Id.* (citing Doc. 21).

Plaintiffs offer no evidence supporting the existence of a joint venture and provide no specific factual allegations, that if proven true, would demonstrate the existence of a joint venture. Despite plaintiffs' argument to the contrary, this Court concludes that all the actual specific conduct alleged, if true, still would not demonstrate the existence of a joint venture. *See Archuleta*, No. 31,950, 2014 WL 890613, at*13 ("a joint venture may be inferred from conduct when 'the parties agree to combine their money, property, or time for conducting a particular business venture and agree to share jointly in profits and losses'"). There is no evidence of an agreement for profit and loss sharing. *See id.* In fact, the only actual agreement involved appears to be the contract between Lange Logistics and AM Transport Services, Inc., which explicitly defines the relationship "as an independent contractor relationship and specifically indicates that none of the terms were to be construed for any purpose to express or imply a joint venture." (Doc. 8-1) at 3, ¶ 11 (citation omitted). Furthermore, without the existence of a joint venture, plaintiffs are left with attempting to hold defendant Tom Lange responsible for the activities of other entities. Plaintiffs have not directed this Court to any specific factual allegations against Tom Lange. Because conclusory allegations are insufficient, especially when contradicted by specific affidavits to the contrary, this Court concludes that plaintiffs have failed to state a claim against defendant Tom Lange. This is a separate and additional reason as to why defendant Tom Lange's motion to dismiss must be granted.

B.  *Seven Seas Fruit*

Defendant Seven Seas Fruit contends that plaintiffs' complaint contains "no allegation of any specific conduct by Seven Seas Fruit at all in this case… when the conclusory allegations, lumping several defendants together, are excised because they are not specific to Seven Seas Fruit." (Doc. 37) at 11 (citing (Doc. 28) at ¶¶ 56-60 and new Count VIII).  Defendant Seven Seas Fruit contends that plaintiffs "admit that AM Transport was an independent contractor and thus, not a joint venture."  (Doc. 37) at 12 (citing (Doc. 28) Count VIII title).  Indeed, the title for this count is "Negligence, Negligent Selection, Negligent Hiring of an Independent Contractor." (Doc. 28) at Count VIII title.

Plaintiffs respond to this argument by referring to the allegations that defendant Tom Lange is the parent company of Lange Logistics and Seven Seas Fruit and that many defendants were engaged in a joint venture with an equal right to control the venture and that Lange defendants, by means of this joint venture, directed, controlled, managed, and supervised the transportation of the load.  (Doc. 20) at 9-11.  Plaintiffs also point to their allegations that the Lange defendants acted negligently by hiring an unfit and unsafe motor carrier.  (Doc. 45) at 5-7. Plaintiffs admit that other than the promotional information on the Lange defendants' website describing them as a family of companies operating full circle service, plaintiffs "have no documents showing the relationship between the Lange defendants besides the self-serving affidavits."  *Id.* at 9.  Plaintiffs contends that the "manner in which the three companies [the Lange defendants] are presented on their shared website suggests that they are collaborative in the matter of a joint venture."  *Id.* (citing Doc. 21).

This Court already has concluded that all the actual specific conduct alleged, if true, still would not demonstrate the existence of a joint venture, *see supra*, Section IV.A. *See Archuleta*,

No. 31,950, 2014 WL 890613, at*13 ("a joint venture may be inferred from conduct when 'the parties agree to combine their money, property, or time for conducting a particular business venture and agree to share jointly in profits and losses'"). There is no evidence of an agreement for profit and loss sharing. *See id.* In fact, the only actual agreement involved appears to be the contract between Lange Logistics and AM Transport Services, Inc., which explicitly defines the relationship "as an independent contractor relationship and specifically indicates that none of the terms were to be construed for any purpose to express or imply a joint venture." (Doc. 8-1) at 3, ¶ 11 (citation omitted). Furthermore, without the existence of a joint venture, plaintiffs are left with attempting to hold defendant Seven Seas Fruit responsible for the activities of other entities. Plaintiffs have not directed this Court to any specific factual allegations against Seven Seas Fruit. Because conclusory allegations are insufficient, especially when contradicted by specific affidavits to the contrary, this Court concludes that plaintiffs have failed to state a claim against defendant Seven Seas Fruit. This is a separate and additional reason as to why defendant Seven Seas Fruit's motion to dismiss must be granted.

C. *Lange Logistics*

Defendant Lange Logistics contends that plaintiffs' complaint contains "no allegation of any conduct by Lange Logistics at all pertinent to this case... when the conclusory allegations, lumping several defendants together, are excised because they are not specific to Lange Logistics." (Doc. 35) at 12-13. Defendant Lange Logistics contends that plaintiffs themselves indicate "that AM Transport was an independent contractor." *Id.* at 13 (citing (Doc. 28) Count VIII title). Indeed, the title for this count is "Negligence, Negligent Selection, Negligent Hiring of an Independent Contractor." (Doc. 28) at Count VIII title.

Plaintiffs respond to this argument by referring to the allegations that defendant Tom Lange is the parent company of Lange Logistics and Seven Seas Fruit and that many defendants were engaged in a joint venture with an equal right to control the venture and that the Lange defendants, by means of this joint venture, directed, controlled, managed, and supervised the transportation of the load.  (Doc. 19) at 10-12.  Plaintiffs also point to their allegations that the Lange defendants acted negligently by hiring an unfit and unsafe motor carrier.  (Doc. 43) at 5-7. Plaintiffs admit that other than the promotional information on the Lange defendants' website describing them as a family of companies operating full circle service, plaintiffs "have no documents showing the relationship between the Lange defendants besides the self-serving affidavits." *Id*. at 9-10.  Plaintiffs contends that the "manner in which the three companies [the Lange defendants] are presented on their shared website suggests that they are collaborative in the matter of a joint venture." *Id*. at 9 (citing Doc. 21).

This Court already has concluded that all the actual specific conduct alleged, if true, still would not demonstrate the existence of a joint venture, *see supra*, Section IV.A. *See Archuleta*, No. 31,950, 2014 WL 890613, at*13 ("a joint venture may be inferred from conduct when 'the parties agree to combine their money, property, or time for conducting a particular business venture and agree to share jointly in profits and losses'").  There is no evidence of an agreement for profit and loss sharing. *See id.*  In fact, the only actual agreement involved appears to be the contract between Lange Logistics and AM Transport Services, Inc., which explicitly defines the relationship "as an independent contractor relationship and specifically indicates that none of the terms were to be construed for any purpose to express or imply a joint venture."  (Doc. 8-1) at 3, ¶ 11 (citation omitted).  Furthermore, without the existence of a joint venture, plaintiffs are left with attempting to hold defendant Lange Logistics responsible for the activities of other entities.

Plaintiffs have not directed this Court to any specific factual allegations against Lange Logistics

other than brokering a load from Georgia to Texas, not to enter New Mexico. It is completely

illogical that Lange Logistics would have responsibility and control over the load after its

contractual terms have been satisfied, or that it would have directed travel into New Mexico

when the load it brokered was to go between Georgia and Texas. Plaintiffs completely fail to

explain the logic behind their allegations or provide any evidence to counter these specific

affidavits. Because conclusory allegations are insufficient, especially when contradicted by

specific affidavits to the contrary, this Court concludes that plaintiffs have failed to state a claim

against defendant Lange Logistics. This is a separate and additional reason as to why defendant

Lange Logistics' motion to dismiss must be granted.

*V.     Conclusion*

Plaintiffs have not carried their burden to demonstrate even a *prima facie* showing

regarding jurisdiction. In addition, plaintiffs supply only insufficient conclusory allegations,

contradicted by specific affidavits.

Regarding plaintiffs' request for limited discovery so they can discover evidence for their

conclusory allegations, this Court finds nothing in the record to suggest that such would benefit

substantial justice or judicial efficiency. Plaintiffs' request for limited discovery is denied.

For the reasons discussed, this Court concludes that:

1) Defendant Tom Lange's Motion to Dismiss (Doc. 36) is granted,

2) Defendant Seven Seas Fruit's Motion to Dismiss (Doc. 37) is granted,

3) Defendant Lange Logistics' Motion to Dismiss (Doc. 35) is granted, and

4) Plaintiffs' request to conduct discovery is denied.

IT IS SO ORDERED.

UNITED STATES DISTRICT JUDGE

24