IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LILLIAN HURTADO, et al.,

    Plaintiffs

v.                                                            No. 1:22-cv-00599-KG-JFR

FNF CONSTRUCTION INC., et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant FNF Construction Inc.'s motion for summary judgment, Doc. 241, and Plaintiffs' motion to file a fourth amended complaint. Doc. 252. For the reasons below, the Court denies both motions.

### I.    Background[1]

This case concerns a fatal car crash on Interstate 40 in McKinley County, New Mexico, that took place in June 2021 around 10:30 p.m. Doc. 241 at 3. The crash occurred in an "advanced warning area" approaching a construction zone controlled by FNF under a contract with the New Mexico Department of Transportation ("NMDOT"). *Id.* Traffic was backed up to nearly a complete stop from two other car crashes that night in other nearby areas controlled by FNF. Doc. 253 at 21; *see* Doc. 241-4 at 5. While attempting to pass another truck, commercial

---

[1] "The facts in this section are either undisputed or stated in light most favorable to the nonmovants, Plaintiffs." *Parraz v. UNM Bd. of Regents*, 2024 WL 3676928, at *1 (D.N.M.). FNF's reply supporting its summary judgment motion does not contain the required responsive statement of material facts, set out in lettered paragraphs. D.N.M.LR-Civ. 61.1(b). "All material facts" set out in lettered paragraphs in Plaintiffs' response motion are therefore "deemed undisputed" for purposes of this motion, as FNF did not "specifically controvert[]" them as Local Rule 61.1(b) requires. The parties are reminded to follow this Court's Local Rules. *See Strickland v. Las Cruces*, 2025 WL 932183, at *1 (D.N.M).

truck driver Larie Aparicio crashed the tractor-trailer that he was operating at over 60 miles per hour into the back of another vehicle that was traveling at around three miles per hour. Doc. 122 at 12–15. The tragic result was a five-car pileup that killed three people and severely injured several others (Plaintiffs in this case). Doc. 122 at 12–15.

FNF blames Mr. Aparicio's alleged inattention for the crash. At his deposition, Mr. Aparicio testified that he was "paying attention to any traffic coming from behind in order to make that lane change safely" and only saw the "lights" of the vehicle that he crashed into "when [he] made the lane change," at which point he "knew there was not time to brake." Doc. 253-4 at 96:2–22. Davin Barela, a State Police accident reconstructionist, concluded in his September 2021 report that Mr. Aparicio was "not paying attention to the traffic in front of him and failed to notice traffic was slow moving"; that dash camera footage showed that traffic was "clearly seen traveling at a low rate of speed and red taillights [could] be seen illuminating"; and that "[a]ll other vehicles in front of [Mr.] Aparicio were able to see the slow-moving traffic in front of them and slow safely with the flow of traffic." Doc. 241-4 at 6.

Plaintiffs, in contrast, blame the crash on FNF's alleged mismanagement of the areas surrounding the construction zone despite FNF's knowing that its conduct could endanger drivers. *See* Doc. 122 at 10–32. For example, only one FNF project manager was simultaneously overseeing two different construction zones that night and had never received FNF's Traffic Control Management Plan. Doc. 253 at 10–11. FNF also gave no advanced warning signals to drivers about the earlier crashes and resulting traffic issues, deviating from FNF's own Traffic Plan, industry standards, NMDOT requirements, and representations made to NMDOT in March 2021 that it would revise its Traffic Plan to include better warnings. *Id.* at

11–12, 19.  Likewise, FNF kept the speed limit at 75 miles per hour, even though it had the ability to recommend a lower speed limit to protect motorists.  *Id.* at 29.

The procedural history of this case is lengthy, so the Court describes only what is relevant to the motions at hand.  Plaintiffs sued Defendants for negligence in New Mexico state court, and Defendants removed the case to this Court in August 2022.  Doc. 1.  Plaintiffs filed their operative complaint (the third amended complaint) in May 2024, Doc. 122, and after multiple orders dismissing other Defendants on various grounds, FNF is the only remaining Defendant.  *E.g.*, *Hurtado v. AM Transp. Servs.*, 2023 WL 5726014, at *1 (D.N.M.); *Hurtado v. AM Transp. Servs.*, 2023 WL 5726194, at *1 (D.N.M.); *see also, e.g.*, Docs. 102, 121, 213, 249.

After granting three extensions, the Court entered its final stipulated scheduling order in March 2025, setting the discovery deadline for July 1, 2025; the dispositive motions deadline for August 1, 2025; and trial for December 8, 2025.  Doc. 212.  Because the parties did not move to extend the deadlines in the Court's July 2023 scheduling order to amend their pleadings, Doc. 168 at 5, those deadlines remained in effect after the Court entered its final scheduling order.  Doc. 142 at 2 (setting August 16, 2025, as Plaintiffs' amendment deadline).

After discovery closed, FNF filed the summary judgment motion at issue on August 1, 2025, seeking dismissal of the entirety of Plaintiffs' negligence case on causation and duty grounds.  Doc. 241.  Plaintiffs opposed the motion, Doc. 253, and FNF replied.  Doc. 257.

Two weeks later, on August 15, 2025, Plaintiffs filed the present motion to amend their complaint a fourth time, seeking to reflect that FNF is the only remaining defendant and to "conform the pleadings to the evidence" adduced during discovery.  Doc. 252.  FNF opposed the motion, Doc. 260, and Plaintiffs replied.  Doc. 262.

## II. Analysis

For the reasons below, the Court denies (A) FNF's summary judgment motion and (B) Plaintiffs' motion to amend the complaint.

### A. *FNF's summary judgment motion is denied.*

FNF's arguments for summary judgment on Plaintiffs' negligence claim do not persuade the Court, and the motion is denied accordingly. Doc. 241.

The summary judgment standard is well established. Summary judgment is warranted if there is "no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility" to identify evidence demonstrating the "absence of a genuine dispute of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), meaning that the "record taken as a whole could not lead a rational trier of fact to find" for the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The burden then shifts to the nonmovant to "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324.

New Mexico negligence doctrine is likewise settled. Negligence "requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages." *Armijo v. Affilion, LLC*, 2020 WL 2797685, at *3 (D.N.M.) (quoting *Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 6). "To impose a duty, a relationship must exist that legally obligates [d]efendant to protect [p]laintiff's interest," *id.* (quoting *Johnstone v. Albuquerque*, 2006-NMCA-119, ¶ 7), and the "existence and scope of a defendant's duty of care is a question of law." *Reservations Unlimited v. Newtek Small Bus. Fin.*, 2020 WL 6158135, at

4

*3 (D.N.M.). Highway contractors, for example, owe drivers a duty of care as a matter of law. *Cumming v. Nielson's, Inc.*, 1988-NMCA-095, ¶ 9. For causation, an "act or omission is a 'cause' of a plaintiff's harm if it contributes to bringing about the harm and the harm would not have occurred without it," but the act or omission "need not be the only explanation for the injury." *Parraz*, 2024 WL 3676928, at *4 (quoting U.J.I. § 13-305). "Unless the facts are undisputed and reasonable minds can draw only one conclusion from the proffered evidence, the issue of causation is generally a question of fact for the jury." *Shultzaberger v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 5085706, at *2 (D.N.M.) (alterations omitted).

       1.    *Causation*

Applying these principles, the Court first rejects FNF's arguments on causation. FNF contends that no rational jury could conclude that FNF had any part to play in causing the crash because it is undisputed that Mr. Aparacio's "inattention was the sole proximate cause of this accident." Doc. 241 at 9, 16. The Court disagrees. True, Mr. Aparicio testified that he did not see the vehicle that he crashed into until it was too late, and the State Police accident reconstructionist noted his belief that Mr. Aparicio was not paying attention. Doc. 253-4 at 96:2–22; *see* Doc. 241-4 at 6. But Plaintiffs adduced significant evidence (viewed favorably at summary judgment) that FNF mismanaged the areas surrounding the construction zone by, for example, not providing motorists with adequate signals. Doc. 253 at 10–33. Would better warnings or a slower speed limit have made a difference? If so, to what extent? Those are quintessential jury questions that the Court declines to resolve through summary judgment.

FNF cites three causation cases, but they do not change the Court's conclusion. *See* Doc. 241 at 9–15. First, *Pals v. Weekly* relied on Nebraska law holding that "creators of roadway hazards are not expected to foresee any extraordinarily negligent driving." 12 F.4th 878, 881–83

5

(8th Cir. 2021). Nebraska law does not apply here, so *Pals* is inapposite. Second, *Nichols v. Berles* applied Illinois law (in a non-precedential ruling) to conclude that two contractors did not proximately cause the death of a pedestrian whom a motorist ran over during the day. 2015 WL 5451430 (Ill. App. Ct.). *Nichols* is distinguishable, however, because the motorist there specifically admitted fault and acknowledged that there were warning signs in the construction zone. *Id.* at *10–18. Last, *New Mexico State Highway Department v. Van Dyke* rejected a driver's attempt to hold a state agency liable for a crash where the agency violated safety standards that were unrelated to the crash (stopping-sight distance and inadequate shoulder). 1977-NMSC-027, ¶¶ 3–12. Here, in contrast, there are genuine disputes of material fact about whether FNF's alleged safety violations contributed to the crash.

The Court also rejects FNF's "independent intervening cause" argument. First, this is a "simple dispute over causation in fact (*i.e.*, whether [FNF's alleged] negligence did or did not cause in fact the injuries suffered by [Plaintiffs])," meaning the "issue for the jury is causation alone, not independent intervening cause." *Chamberland v. Roswell Osteopathic Clinic*, 2001-NMCA-045, ¶ 19. Second, the independent intervening cause doctrine requires evidence that the independent event was "unforeseeable," and it is a quintessential jury question here whether this crash, at least in part, was the foreseeable result of FNF's alleged mismanagement. *Id.* ¶ 23. FNF's causation arguments therefore lack merit.

    **2.**    **Duty**

The Court likewise rejects FNF's arguments on duty. FNF contends, in just three paragraphs and after its causation analysis, that no reasonable jury could conclude that FNF owed motorists a "duty to warn of the slowed and backed up traffic" because the traffic was "open and obvious." Doc. 241 at 20. The Court again disagrees. To start, FNF was charged

with managing the safety of the area that night and therefore owed motorists a duty of care under settled New Mexico law. *Cumming*, 1988-NMCA-095, ¶ 9 ("Highway contractors have a duty at common law to take adequate measures to protect the safety of the traveling public," including "appropriate warning signs."). The open and obvious doctrine, moreover, "has been abolished in New Mexico" since the early 1990s. *Smith ex rel. Smith v. Bryco Arms*, 2001-NMCA-090, ¶ 41. Instead, a "pure comparative negligence" system applies, where the "'open and obvious' nature of the risk would merely affect the comparative fault of the parties instead of completely absolving [d]efendant of liability." *Betsuie v. United States*, 65 F. Supp. 2d 1218, 1222 (D.N.M. 1999). FNF's "open and obvious" arguments therefore lack merit as well, and the motion for summary judgment is denied.

### B. *Plaintiffs' motion to amend the complaint is denied.*

The Court also denies Plaintiffs' motion to file a fourth amended complaint at this late stage of the proceedings. Doc. 252.

The rules governing amended pleadings are not in dispute. After the 21-day deadline to amend as a matter of course passes, a party may amend its pleadings "only with the opposing party's written consent or the court's leave," and the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "When," however, "a party seeks to amend pleadings after a deadline imposed by a scheduling order, Rule 15(a)'s liberal 'freely give [leave]' standard is superseded by Rule 16(b)'s requirement of good cause for modifying a scheduling order," and "[t]o amend under such circumstances, a party must show good cause for missing the deadline." Wright & Miller, Fed. Prac. & Proc. § 1488 (2025) ("Wright & Miller"); *see, e.g.*, *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 989 (10th Cir. 2019) ("A party seeking leave to amend after a scheduling order deadline must satisfy both the Rule 16(b) and Rule 15(a) standards.").

"[P]laintiffs have been denied leave to amend to add new claims or theories when the amendment is sought after the case has been pending for some time, discovery has closed, and the court is about to rule on defendant's summary-judgment motion." Wright & Miller § 1488.

Under these standards, Plaintiffs' amendment motion lacks merit because it is untimely. The deadline for Plaintiffs to amend their pleadings under the Court's July 3, 2024, scheduling order was August 16, 2024, *see* Doc. 142 at 2, yet Plaintiffs did not file their motion to amend until August 15, 2025—nearly a year later. Doc. 252. Rule 16(b)'s "good cause" standard therefore governs the Court's analysis. *Tesone*, 942 F.3d at 989. Plaintiffs improperly rely on Rule 15(a)'s "freely give leave" standard in their motion and do not satisfy Rule 16(b)'s "good cause" standard. *See* Doc. 252 at 1–4. Indeed, this case has been "pending for some time" (since August 2022), "discovery has closed," the Court is "about to rule on [FNF's earlier-filed] summary-judgment motion," and trial is looming—all reasons to reject Plaintiffs' amendment motion at this late stage of the case. Wright & Miller § 1488.

Plaintiffs' counterarguments lack merit. Plaintiffs, for example, contend that the "scheduling order does not provide a deadline by which to file an amended complaint"—but that is incorrect. Doc. 262 at 3. As stated above, the Court's July 3, 2024, scheduling order set an August 16, 2024, amendment deadline, Doc. 142 at 2, and the parties did not move to extend that deadline in their final joint motion to modify the scheduling order. Doc. 168 at 5. The Court therefore did not alter that deadline in its final scheduling order, and it remained in effect as a result. *See* Doc. 212.

Plaintiffs' motion to amend is therefore denied. Denial is without prejudice, as the Court "may permit the pleadings to be amended" at trial if a "party objects that evidence is not within the issues raised in the pleadings." Fed. R. Civ. P. 15(b)(1); *see* Wright & Miller § 1495.

8

### III.     *Conclusion*

FNF's summary judgment motion, Doc. 241, and Plaintiffs' motion to amend the complaint, Doc. 252, are denied.

/s/Kenneth J. Gonzales
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.